UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA G. DELSID,<br><br>          Plaintiff,<br><br>     v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>          Defendant. | Case No.  1:23-cv-00665-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT AND REMANDING ACTION**<br><br>(Docs. 14, 18) |

**INTRODUCTION**

Plaintiff Veronica G. Delsid ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 7, 9, 10.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record as a whole and is not based upon proper legal standards.  Accordingly, this Court will vacate the decision of the ALJ, deny the Commissioner's request to affirm the agency decision, and remand the matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff protectively filed an application for disability insurance benefits on August 7, 2019. AR 24, 168-69, 170-71.[3]  Plaintiff alleged that she became disabled on March 1, 2019, due to her lower back, left leg, and an inability to walk, sit, or stand for long periods of time.  AR 193.  Plaintiff's application was denied initially and on reconsideration.  AR 90-94, 98-103.  Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Scot Septer issued an order denying benefits on March 30, 2022.  AR 21-35, 41-63.  Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  This appeal followed.

**Plaintiff's Testimony**

ALJ Septer held a telephonic hearing on March 8, 2020.  Plaintiff appeared with her attorney, Amanda Foss.  Mary Jesko, an impartial vocational expert, also appeared.   AR 43-44.

In response to questions from the ALJ, Plaintiff testified that she completed high school.  For the period from 2007 to 2011, Plaintiff worked for Solis Oil as an assistant credit manager, doing daily deposits, accounts receivable, and accounts with affiliations.  She left the position because she was laid off.  For a period of time from 2014 to 2016, Plaintiff worked through temporary agencies as an office clerk.  AR 47-48.

Plaintiff testified that she has not been able to work since 2016, because of issues with her back. She had surgery on both of her hands:  her right hand in May 2021, and her left hand in November 2021.  She also had back surgery in September 2021.  AR 49.  Her conditions worsened

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

after 2016.  By 2019 and 2021, she was not able to sit or stand.  She had pain throughout her back and legs all the time.  In her hands, she had trigger finger, carpal tunnel, and tendonitis, which worsened over time.  AR 49-50.  Prior to her back surgery, she was not able to go anywhere or do anything.  With her hands, she was not able to cook or clean.  Her daughter or her mother would help do those things for her, and they have been helping on and off since 2016.  AR 50-51.

Plaintiff testified that she barely drives because of pain in her hands.  Her daughter drives her around, which is helpful.  Before that, her mother helped her.  At this point, she does light chores.  She does not vacuum, sweep, or mop.  She can put laundry in the washer, but her daughter has to put the laundry in the dryer and fold it.  Plaintiff can cook, but she does not cut things up or open cans.  She supervises her daughter in cooking.  Her activities around the house have lessened since 2016.   She initially had some benefit from the surgeries, but the pain has returned in her wrists and arms.  AR 51-52.  Plaintiff reported that she would not be able to return to her past work because she would not be able to sit.  With her hands, she typed, did data entry, and made phone calls.  She would not be able to do any of that anymore.  AR 52-53.

In response to questions from her attorney, Plaintiff confirmed she went into St. Agnes in August of 2019 with severe back pain.  At the time, they did not know what was going on, but they figured it out, and she has had surgery.  During that time, she was having limitations with her hands.  In 2019, she could use her hands for about 10 or 15 minutes before she needing to stop for a couple of hours due to numbness.  Her pain medication and muscle relaxers make her sleepy.  She was taking both of those medications in 2019.  She would take naps during the day because of the sleepiness.  On average, she would nap two or three hours at a time.  She still has cramps and spasms.  The surgery lightened the pain.  Her spine was degenerating, and she still has some severe pain.  She has difficulty with focus and concentration because of medication side-effects or pain.  She has issues with her memory and needs reminders to do things, like take medication.  AR 53-55.

Plaintiff testified that in 2019 she was using a walker.  It was not prescribed, but was recommended by her doctors.  She used a walker right after the surgery and now just uses a cane.  AR 55.  Her primary doctor recommended the cane.  AR 56.

3

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE"). The VE characterized Plaintiff's past work as accounts receivable clerk. AR 58-59. The ALJ also asked the VE hypothetical questions. For all the hypothetical questions, the ALJ asked the VE to assume an individual of the same age, education, and vocational background as Plaintiff. For the first hypothetical, the ALJ asked the VE to assume an individual who could do a full range of work at the light exertional level. The individual could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, frequently balance, crawl, and kneel, and occasionally crouch and stoop. The VE testified that such an individual would be able to perform Plaintiff's past work. In addition to past work, there would be other work in the national economy for such an individual. The VE testified that examples of other jobs would be counter clerk, small product assembler, and marker. AR 59

If the individual in the first hypothetical required the use of a cane for ambulation, the individual would be able to perform Plaintiff's past work, but the job examples of marker and counter clerk would be precluded. The small product assembler job would not be precluded as long as the cane was needed for ambulation versus standing. AR 59-60. If the individual in the first hypothetical would require the ability to alternate between sitting and standing as needed, the VE testified that the individual would be capable of performing Plaintiff's past work as long as the percentage of time for sitting would not be compromised and would not limit the individual's ability to sit for six hours in a work shift. AR 60.

The VE testified if the individual would be off task from duties and assignments for 15 percent of an eight-hour workday, then the individual would not be able to sustain competitive work. The VE also testified that if the individual in the first hypothetical was limited to occasional handling and fingering bilaterally, then the individual would not be able to perform Plaintiff's past work  AR 61. However, the individual could perform other work at the light level of exertion, such as counter clerk, rental clerk, and usher. AR 61. In response to questions from Plaintiff's attorney, the VE testified that if a cane were needed to balance or to ambulate and with occasional handling, fingering, and fingering, then only the usher job would be precluded. The VE further testified that if the individual would be absent two days a month continuously and unscheduled, then there would be work available. The VE indicated that two days a month is the maximum threshold tolerated. AR 62.

4

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 24-35. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 1, 2019, through her date last insured of December 31, 2019. AR 26. The ALJ identified the following severe impairments through the date last insured: degenerative disc disease of the lumbar spine. AR 26-27. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 27.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") through the date last insured to perform light work, except that she could frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, frequently balance, crawl, and kneel, and occasionally crouch and stoop. AR 27-33. With this RFC, the ALJ found that through the date last insured, Plaintiff could perform her past relevant work as an accounts receivable clerk. AR 33-34. Additionally, the ALJ found that there were other jobs that existed in the national economy that she could have performed, such as counter clerk, small product assembler, and marker. AR 34. The ALJ therefore concluded that Plaintiff was not under a disability at any time from March 1, 2019, the alleged onset date, through December 31, 2019, the date last insured. AR 35.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be

considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[4]

### A. Subjective Complaints

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's subjective pain testimony. (Doc. 14 at 17.) The Court agrees.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 28. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

In evaluating Plaintiff's subjective complaints, the ALJ reasoned as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant and the overall record indicate worsening of symptoms over time. As discussed above, prior to the claimant's back surgery in September of 2021, an MRI of the spine showed worsening of the claimant's degenerative disc disease and she admitted her condition worsened over time. The claimant alleged that she was using a cane or other assistive devices since 2019, but the record does not support the use of an assistive device during the period prior to the date last insured. During the period at issue, the claimant had conservative care, including regular Toradol injections, physical therapy, and medication management. The claimant also alleges debilitating hand symptoms, but it appears she first reported hand symptoms in November of 2019 and she did not see a hand specialist until a year later.

AR 27-28.

Plaintiff alleged disability based on a lower back impairment and an inability to walk, sit, or stand for long periods of time. AR 193. The ALJ determined that Plaintiff's degenerative disc disease of the lumbar spine was a severe impairment. AR 26. When discounting Plaintiff's subjective complaints, the ALJ first reasoned that Plaintiff's statements regarding her symptoms were inconsistent with the record because those symptoms worsened over time. In other words, the ALJ determined that, in contrast to Plaintiff's statements, the record evidence showed a worsening of Plaintiff's condition *after* her date last insured of December 31, 2019.[5] To that end, the ALJ indicated that prior to Plaintiff's back surgery in September of 2021, an MRI of the spine showed worsening of

---

[5] To be entitled to disability insurance benefits, Plaintiff was required to establish disability while still ensured for benefits, i.e., before December 31, 2019. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (disability insurance benefits claimant must prove she was disabled before her insured status expired); AR 24 (noting claimant must establish disability on or before December 31, 2019, in order to be entitled to a period of disability and disability insurance benefits.)

Plaintiff's degenerative disc disease and she admitted her condition worsened over time. AR 28. However, as Plaintiff points out, the ALJ does not explain how Plaintiff's spinal disorder worsening over time undermines her testimony regarding symptoms and limitations prior to her date last insured. (Doc. 14 at 18.) Indeed, the record evidence, which the ALJ noted, indicated that Plaintiff's back condition was such that spinal surgery was recommended in October 2019, before her date last insured. AR 31, 478-79 ("The patient's pain is disrupting her quality of life and is getting progressively worse . . . . At this point the patient has recourse to L5-S1 ALIF with L5-S1 PSF with left-sided decompression."). Given the record evidence, the worsening of Plaintiff's back condition after the date last insured is not a clear and convincing reason for discounting Plaintiff's subjective complaints.

The Commissioner argues that, in discounting Plaintiff's subjective complaints, the ALJ also noted Plaintiff's conservative treatment for her back condition, which consisted mostly of medication management along with Toradol injections and physical therapy. AR 28 ("During the period at issue, the claimant had conservative care, including regular Toradol injections, physical therapy, and medication management."). An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony). Yet, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015); *see also Wheeler v. Kijakazi*, No. 1:21-cv-1225 JLT BAM, 2023 WL 4146215, at *4 (E.D. Cal. June 23, 2023).

Here, the ALJ characterized Plaintiff's treatment as conservative, noting her regular Toradol injections and medication management. AR 29. Courts, including courts in the Ninth Circuit and in

this district, more recently have questioned whether injections (and even pain medications) constitute conservative treatment.  *See*, *e.g.*, *Gilliland v. Saul*, 821 Fed. App'x 798, 799 (9th Cir. 2020) (finding the ALJ erred in characterizing treatment as conservative where the plaintiff received "several pain medications and trigger point injections"); *Beltran v. Kijakazi*, No. 1:21-cv-0603 JLT BAM, 2023 WL 6164105, at *8 n.4 (E.D. Cal. Sept. 21, 2023) (noting that plaintiff's treatment may not be properly characterized as "conservative" because her treatment included lumbar injections); *Mario B. v. Kijazaki*, No. 2:23-cv-00935-MAA, 2023 WL 6049740, at *6 (C.D. Cal. Sept. 14, 2023) (describing treatment regimen to include cortisone injections and noting courts have questioned whether injections constitute conservative treatment; citing cases); *Wheeler*, 2023 WL 4146215, at *5 (noting it was not clear that the injections plaintiff received to treat her ankle were properly characterized as "conservative treatment"); *but see Rivera v. Comm'r of Soc. Sec.*, No. 1:21-cv-00761-SAB, 2023 wl 2895218, at *14 (E.D. Cal. Apr. 11, 2023) (determining heat therapy, physical therapy, medications, and occasional Toradol injections constituted conservative treatment).  The record reflects that Plaintiff received regular injections on nearly a monthly basis beginning in July 2018 through her last day insured, along with taking multiple pain medications. AR 442-43 (August 2018 Toradol injection; medication refills for Norco and Flexeril), 445 (September 2018 Toradol injection and medication refill on Norco), 446-47 (October 2018 Toradol injection and medication refills on Norco, Ibuprofen, and Flexeril), 448-49 (November 2018 Toradol injection and medication refill on Norco), 452-52 (December 2018 Toradol injection and refills on Norco, Flexeril, and Ibuprofen), 454-56 (January 2019), 457-58 (February 2019), 459-60 (March 2019), 461-62 (April 2019), 463-64 (May 2019), 465-66 (June 2019), 467-68 (August 2019), 469-70 (September 2019), 491-92 (October 2019), 496-97 (November 2019).

The Court recognizes that the ALJ correctly discussed the more aggressive treatment he believed available and appropriate for Plaintiff's back condition, i.e., surgery, but he improperly faulted Plaintiff for failing to follow through with that surgery.  In particular, the ALJ noted that "Plaintiff was initially scheduled for surgery in January of 2020, but she did not go through with surgery and pursued continued conservative care of her symptoms."  AR 32.  According to the record, lumbar fusion surgery was recommended and scheduled at Plaintiff's initial evaluation with

orthopedic surgeon Alexandre Rasouli, M.D. at Cedars Sinai on October 24, 2019, during the relevant period. AR 477-478, 494. However, Plaintiff had to cancel the surgery due to cost. AR 31, 499 ("Unable to come up with out of [ ] pocket cost. HIGH deductible."). The ALJ acknowledged that Plaintiff "cancelled the lumbar surgery due to the cost," (AR 31), but nonetheless cited "conservative treatment" as a reason for discounting Plaintiff's subjective complaints. This was error. Conservative treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The reason that Plaintiff did not initially pursue the recommended and scheduled surgery was because of an inability to pay for such treatment. AR 31, 499. "[D]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (same); *see also Paxton v. Saul*, No. 1:18-cv-00716-BAM, 2020 WL 639199, at *8 (E.D. Cal. Feb. 11, 2020) (citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), ("A disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."); *Jeffrey P. v. Saul*, No. ED CV 18-2004-SP, 2020 WL 1445745, at *5 (C.D. Cal. Mar. 25, 2020) (concluding lack of postoperative treatment was not a clear and convincing reason to discount plaintiff's testimony given, in part, that there was a period of time in which plaintiff could not afford any treatment); *Tiffany M. P. v. Comm'r of Soc. Sec.*, No. ED CV 18-00933 MWF (RAO), 2019 WL 3215856, at *1 (C.D. Cal. July 17, 2019) (explaining conservative treatment not a proper basis for discounting subjective complaints where ALJ improperly faulted plaintiff for not seeking or receiving treatment from a specialist where plaintiff was financially unable to take advantage of referrals to specialists).

The ALJ also discounted Plaintiff's allegations that she was using a cane or other assistive devices since 2019 because the record did not support the use of such a device during the period prior to the date last insured. AR 28-29. An ALJ may properly discount a claimant's testimony based on a lack of supporting or corroborating medical evidence, but that cannot be the sole basis for discounting testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining "lack of medical evidence cannot form the sole basis for discounting pain testimony"); *Bunnell v. Sullivan*, 947 F.2d

341, 345 (9th Cir. 1991) (en banc) (concluding that "an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").

Based on the foregoing, the Court finds that the ALJ failed to provide specific, clear and convincing reasons to discount Plaintiff's subjective complaints regarding her back impairment. This error was not harmless. The only independently sufficient ground for discounting Plaintiff's subjective complaints relative to her back condition was the lack of supporting or corroborating medical evidence, but this reason cannot form the sole basis for discounting testimony. *See Burch*, 400 F.3d at 681.

As an additional reason for discounting Plaintiff's subjective complaints, the ALJ noted that Plaintiff also alleged debilitating hand symptoms, but discounted that allegation because it appeared that Plaintiff first reported hand symptoms in November of 2019 and she did not see a hand specialist until a year later. AR 29. Even assuming that the ALJ's statement discounting Plaintiff's allegations regarding her hand issues—which the ALJ found to be not severe—is specific, clear and convincing and supported by substantial evidence, the ALJ did not provide any explanation as to how that testimony undermined Plaintiff's subjective testimony regarding back pain or the functional limitations with respect to her back impairment. *See Robinson v. Berryhill*, 2018 W: 3807939, at *7 (C.D. Cal. Aug. 8, 2018) (determining reasons for discounting allegations regarding asthma were not sufficient to undermine subjective symptom testimony related to severe back and knee impairments).

### B. Remedy

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). "[A] remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy." *See Wheeler*, 2023 WL 4146215, at *7 (citations omitted). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir.

2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).

## **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, IT IS HEREBY ORDERED as follows:

1. The decision of the Administrative Law Judge is vacated and the Commissioner's request to affirm the decision is DENIED.
2. The matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.
3. The Clerk of the Court is directed to enter judgment in favor of Plaintiff Veronica Delsid and against Defendant Martin O'Malley, Commissioner of Social Security, and to close this case.

IT IS SO ORDERED.

Dated:   **May 22, 2024**              /s/ *Barbara A. McAuliffe*          
                                       UNITED STATES MAGISTRATE JUDGE